Judge Robert S. Lasnik

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff <br><br> v. <br><br> LEONARDO VIDAL <br><br> Defendant. | NO. 24-cr-100-RSL <br><br> UNITED STATES SENTENCING MEMORANDUM |

Leonardo Vidal orchestrated a scheme to steal more than $6 million from retailers around the country through "refunding fraud." Refunding fraud is where a purchaser orders an item from an online retailer, receives the item, and then misrepresents the status of the item to the retailer to secure a full refund, while also keeping the ordered item. Vidal ran two stunningly successful refunding fraud "businesses" on Telegram, which he called Ressu Refunds and Simple Refunds. Through these businesses, Vidal, his staff, and hundreds of purchasers obtained fraudulent refunds from dozens of victim retailers throughout the country. His fraud was sophisticated, deliberate, and long-term. But there are mitigating facts too: Vidal is a first-time offender who immediately took responsibility for his crimes. For this conduct, the government recommends the Court sentence Vidal to

United States' Sentencing Memorandum - 1
United States v. Vidal, CR24-100RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

60 months in prison, three years of supervised release, and order restitution per the plea agreement.

## I. BACKGROUND

### A. Offense Conduct

*1. Refunding fraud surged during the COVID-19 pandemic.*

Vidal was one of a community of "professional refunders," who operated online services that executed refunding fraud on a massive scale. PSR ¶ 10. Professional refunders sold refunding fraud as a service: They claimed they could obtain fraudulent refunds on behalf of their customer / purchasers by impersonating the purchaser with the victim retailer. *Id.* They advertised publicly on social media channels such as Telegram and Discord, claiming "refunding" is a safe, easy, and effective way to make money. PSR ¶ 10. They enticed prospective customers with images of fancy cars, jewelry, and cash.

Professional refunders used various "methods" to defraud victim retailers. *See* Plea Agreement (Dkt. No. 11) ¶ 8(j). For example, a refunder would falsely inform the victim retailer that a purchaser's products did not arrive, convincing the retailer to issue a refund for the supposedly lost product. *Id.* "Return to Sender" or "instant" was a method in which refunders used mail carrier staff to input false "Return to Sender" scans in the package tracking history, which triggered an automatic refund from the retailer or payment processor. These refunding "methods" were akin to trade secrets of the professional refunder and were closely guarded.

The end goal of each of these misrepresentations was to deceive the retailer into (a) believing the purchaser had returned (or intended to return) the product or there was a problem with the product's delivery, and (b) issuing a refund to the purchaser for the item. Plea Agreement ¶ 8(*l*). In reality, as the "professional refunder" well knew, the purchaser received the item, and through the fraudulent refunding process, kept both the item and the value of the fraudulently induced refund. *See id.*

United States' Sentencing Memorandum - 2
*United States v. Vidal*, CR24-100RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Many professional refunders organized their scheme on Telegram because it allowed them to reach a large audience, while affording some level of anonymity. Plea Agreement ¶ 8(e). Telegram is a cloud-based messaging service that users can access through an application on their mobile device or computer, or through the web. PSR ¶ 11. Telegram enables users to disseminate messages to large groups through channels, which can have an unlimited number of members. Channels can be public or private. Public channels have a permanent uniform resource locator (URL), which enables easy sharing, search, and discovery. *Id.*

Refunding fraud surged during the pandemic, when demand for e-commerce increased at the same time shutdowns and supply chain challenges forced retailers to minimize warehouse staff. A retailer located within the Western District of Washington told law enforcement that it discovered it had an issue with refund fraud when it started receiving empty packages at its warehouses. Ex. A. Due to short staffing at those warehouses during COVID, the retailer issued an automatic refund once a package was scanned at UPS. *See id.* The retailer learned that professional refunders manipulated this practice by ordering high-value items, falsely claiming they would return the item, and returning an empty box instead. *Id.* This retailer estimated it had lost $23 million to refunding fraud in just a few months. *See id.* The retailer identified refunding fraud as its "number one fraud problem right now." *Id.* at 3.

    2.    *Vidal participated in a mentorship program operated by co-schemer Sajed Al-Maarej.*

United States' Sentencing Memorandum - 3
*United States v. Vidal*, CR24-100RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Vidal started fraudulent refunding in 2021 when he participated in a "mentorship program" hosted by co-schemer Sajed Al-Maarej. Al-Maarej was an experienced refunder by that point, having started his own refunding service—Simple Refunds—in 2020. Al-Maarej and another refunder hosted a class on Discord to teach others how to defraud victim retailers through proprietary refunding methods. These classes are known in the refunding world as "mentorship programs." Al-Maarej later touted Vidal as one of his "huge successes," as shown in the Simple Refunds post below:



Simple Refunds, May 2022

Ex. B.

       3.    *Vidal started "Ressu Refunds" in 2021.*

Vidal used what he learned in Al-Maarej's mentorship program to start his own fraudulent refunding service in 2021 called Ressu Refunds. Plea Agreement ¶ 8(q).

United States' Sentencing Memorandum - 4
United States v. Vidal, CR24-100RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Ressu Refunds operated on two primary Telegram channels: the Ressu Refunds "main" channel and the Ressu Refunds "vouches" channel. Vidal used the main Ressu Refunds Telegram channel to aggressively promote his services and boast about his ability to defraud the victim companies, Plea Agreement ¶ 8(g), as shown below:



Vidal frequently used promotions to recruit even more purchasers to the fraud. For example, in May 2022, he offered his services for 10 percent of the value of the fraudulently obtained refund, a discount from his typical 15 percent rate. Plea Agreement ¶ 8(g). Ressu Refunds purchasers placed more than 300 orders for fraudulent refunds during May 2022 (about ten per day). Vidal also used the main channel to mock the victim retailers and counsel his followers how to evade detection. For example, in November 2022, Vidal posted on Ressu Refunds: "Best way to abuse [VC9] is to place several orders and get them all refunded at the same time. A lot of times after your first order [VC9] bans you, very wasteful." PSR ¶ 25; *see also* PSR ¶ 24.

    4.    *Vidal accepted orders using a Google-based intake system.*

Purchasers desiring a fraudulent refund through Ressu Refunds provided Vidal order and account information through either Telegram or a Google Form accessible through the Ressu Refunds Telegram channel. Plea Agreement ¶ 8(i). Purchasers input

United States' Sentencing Memorandum - 5
United States v. Vidal, CR24-100RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

information Vidal needed to complete their orders, including the purchaser's Telegram username, the store name, login information for the purchaser's account with the retailer, order number, order total, billing name, and billing address. *Id.*; PSR ¶ 19. Vidal captured this information in a Google Sheet to which he and his staff had access. *Id.* The Google sheet, which law enforcement seized during its investigation, is a thorough accounting of Vidal's fraud: A version of the sheet spanning just May through December 2022 shows information on more than 3,000 orders on behalf of hundreds of purchasers worth at least approximately $5.3 million. *See* Plea Agreement ¶ 8(t). Vidal and the purchasers he recruited stole from dozens of victim retailers during this time. *Id.*

Vidal (or someone working at Vidal's direction) used the information provided by the purchaser to impersonate the purchaser with the retailer. Plea Agreement ¶ 8(j). Vidal or his staff lied to the retailer about the status of the product or an anticipated return to obtain the fraudulent refund for the purchaser. *Id.* They used common misrepresentations to secure a fraudulent refund, Plea Agreement ¶ 8(k), many of which Vidal learned from his co-schemer Al-Maarej and then passed along to his own staff.

        5.     *Vidal accepted payment and vouched the results.*

Once the retailer dispensed the refund—and the purchaser kept the product—the purchaser kicked back a percentage of the value of the refund to Ressu Refunds using peer-to-peer payment or cryptocurrency. Vidal typically charged between 10 and 15 percent of the value of the refunded product. *See* Plea Agreement ¶ 8(m).

Vidal, who prided himself on operational security, funneled payments through third-party accounts to conceal the source of the funds. Plea Agreement ¶ 8(n). One such account was owned by S.G., who was not involved in the fraud. *Id.* Vidal gained access to S.G.'s account through an unindicted co-conspirator. Vidal directed Ressu Refunds purchasers to deposit money into S.G.'s account to which Vidal had access. *Id.* Vidal then transferred the Ressu Refunds proceeds into one of his accounts. *Id.* Vidal did this knowing the funds were the proceeds of the unlawful refunding scheme. *Id.*

United States' Sentencing Memorandum - 6
*United States v. Vidal*, CR24-100RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

After Vidal took his cut, he posted an image of many successful refunds on the Ressu Refunds vouches Telegram channel. Plea Agreement ¶ 8(r). Vouches were a critical tool in the fraud: They enabled Vidal to promote his service and solicit new purchasers. *Id.*

6.   *Vidal hired staff to help him run Ressu Refunds.*

Vidal relied on staff known as "professional refunders" to help him process orders for Ressu Refunds and later Simple Refunds. Plea Agreement ¶ 8(j). Vidal posted frequently on Telegram about his staff members. At one point, Vidal solicited employees through an online Google form. *See* Ex. C. Prospective employees touted their refunding credentials by explaining, for example, that "I have been refunding for myself and my friends since so long, i wanted to start a channel but couldn't get subscribers or stuff. have been looking to work for a well known refunder through which i can make good money. . . ." Ex. D.

7.   *Ressu Refunds caused more than $5 million in losses to victim retailers.*

Vidal grew Ressu Refunds into a self-described refunding "empire" with staff, a sophisticated order intake system, more than 1,000 followers, and a multitude of refunding methods. *See* Ex. F (Telegram post boasting about 1,000 followers); Plea Agreement ¶ 8(k). In just eight months of the fraud—from May 2022 through December 2022—Ressu Refunds facilitated more than 3,000 fraudulent refunds worth approximately $5.3 million. Vidal obtained approximately $640,000 from this part of the fraud. Plea Agreement ¶ 8(t).

8.   *Vidal joined Simple Refunds as a partner and later purchased the channel.*

While he was running Ressu Refunds, Vidal also partnered with his mentor Sajed Al-Maarej to run Simple Refunds. Plea Agreement ¶ 8(v). Al-Maarej started Simple Refunds in mid-2020. Simple Refunds operated much like Ressu Refunds: Al-Maarej maintained two Telegram channels, a Simple Refunds "main" channel and a Simple Refunds "vouches" channel. *See* Plea Agreement ¶ 8(e)–8(m). He relied on a Google-based

United States' Sentencing Memorandum - 7
*United States v. Vidal*, CR24-100RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

order intake system to organize customers' orders. *See id.* Al-Maarej also hired staff and launched two mentorship programs. *See* Ex. B. Al-Maarej gained notoriety by mastering certain refunding "methods," like VC1 instant, which relied on USPS and UPS employees to input false scans into package tracking history, thereby triggering an instant refund. By June 2022, Simple Refunds had a dedicated following of more than 1,000 subscribers and was a multi-million-dollar business. Vidal joined the Simple Refunds team in June 2022. Plea Agreement ¶ 8(v).

Between June and December 2022, Vidal and Al-Maarej ran Simple Refunds together: Al-Maarej provided the infrastructure (the channel and orders spreadsheet), while Vidal and his staff did most of the refunding work. Plea Agreement ¶ 8(v). Vidal and Al-Maarej agreed on a 30-70 split of the profits (with Al-Maarej keeping 30%). Vidal gained increasing authority over the channel during this time. For example, Vidal helped develop and publish a Simple Refunds Store List that identified retailers Vidal and Al-Maarej believed they could defraud. Plea Agreement ¶ 8(v). An email account associated with Vidal had access to the Simple Refunds orders data, along with Al-Maarej. *Id.* Vidal was an administrator on the Simple Refunds Telegram channel with authorization to post under his moniker "Ressu." *Id.*

Al-Maarej then sold Simple Refunds to Vidal on December 28, 2022. Plea Agreement ¶ 8(w). Vidal ran Simple Refunds between December 28, 2022 and April 1, 2023, when he sold it to another Telegram user. *Id.* Simple Refunds was responsible for approximately $726,414 worth of fraudulently induced refunds between June 25, 2022 and April 1, 2023. Vidal obtained approximately $87,000 from this part of the fraud.

9.  *Vidal launched Affordable Deals.*

Vidal did not exit the fraudulent refunding world after he sold Ressu Refunds and Simple Refunds in April 2023. Rather, he used his deep knowledge of the refunding industry to launch a resale operation called Affordable Deals. *See* Plea Agreement ¶ 8(s). Through Affordable Deals, Vidal purchased retail items at a steep discount from

United States' Sentencing Memorandum - 8
*United States v. Vidal*, CR24-100RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

individuals involved in fraudulent refunding. Plea Agreement 8(s). Vidal knew the items that he purchased were obtained through fraudulent refunding. *Id.* Vidal planned to resell those items online for a profit.

   10.   *Law enforcement searched Vidal's home, and he confessed.*

Law enforcement executed a valid search warrant at Vidal's California home in September 2023. Vidal participated in a *Mirandized* interview with law enforcement in which he largely accepted responsibility for his role in the fraudulent refunding scheme.

Vidal also informed agents that he stored stolen goods in four shipping containers on a friend's property close to Vidal's home. *See* Ex. F. Vidal drove with the agents to the property and provided consent to search. Agents used keys provided by Vidal to open two of the shipping containers. *e* In one storage container, they found approximately 245 Dewalt Drills, approximately 92 Coway Airmega Air Purifiers, and approximately 78 M18 Fuel High Torque Wrenches, all commonly refunded items. Ex. F. Images of the shipping containers are shown below:



United States' Sentencing Memorandum - 9
*United States v. Vidal*, CR24-100RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Ex. F, at 4 & 5. Some of the packages had shipping labels addressed to Affordable Deals, Vidal's resale operation. Vidal admitted that about 90 percent of the merchandise in the containers was from fraudulent refunding. Ex. F. Law enforcement returned to the premises several weeks later and seized the stolen items.

**B.      Procedural History**

In June 2024, government charged Vidal by information with one count of wire fraud and one count of concealment money laundering. Dkt. No. 1. Vidal waived his right to be charged by indictment and pleaded guilty to both counts charged in the information. Dkt. No. 11. Vidal admitted much of the conduct described above, which saved the government the time and expense of proving key allegations at sentencing. *See* Plea Agreement ¶ 8. Sentencing is set for February 6, 2025, at 11:30 a.m. before this Court.

## II.     SENTENCING GUIDELINES CALCULATIONS

The Plea Agreement sets forth the agreed United States Sentencing Guidelines calculation. *See* Plea Agreement ¶ 9. The following chart reflects the parties' agreement:

| Description | Citation | Impact |
|---|---|---|
| Base offense level | §§ 2S1.1(a)(1), 2B1.1(a)(1) | +7 |
| Fraud loss between $3.5 million and $9.5 million | § 2B1.1(b)(1)(J) | +18 |
| Offense involved ten or more victims | § 2B1.1(b)(2)(i) | +2 |
| Offense involved sophisticated means | § 2B1.1(b)(10) | +2 |
| Defendant was convicted of money laundering under 18 U.S.C. § 1956 | § 2S1.1(b)(2)(B) | +2 |
| Defendant was an organizer or leader of a criminal activity that involved five or more participants | § 3B1.1(a) | +4 |
| Defendant accepted responsibility | § 3E1.1(a) and (b) | -3 |
| **Total offense level** | | **32** |

*Id.*; PSR ¶¶ 38–50.

United States' Sentencing Memorandum - 10
*United States v. Vidal*, CR24-100RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

There is ample evidence to support each agreed-upon guideline. First, Counts 1 and 2 are grouped under money laundering, 18 U.S.C. § 1956. The guideline for § 1956 is USSG § 2S1.1, which references USSG § 2B1.1 when determining the offense level. The base offense is seven. USSG § 2B1.1(a)(1). Vidal agrees that the total fraud loss associated with Ressu Refunds and Simple Refunds exceeded $6 million. This includes about $5.3 million in losses calculated from the Ressu Refunds orders spreadsheet and about $700,000 calculated from vouches posted to the Simple Refunds Telegram channel. Plea Agreement ¶¶ 8(t), 8(x). Second, the Ressu Refunds orders data shows that Vidal targeted dozens of victim retailers, many more than the ten required to trigger a two-point increase under USSG § 2B1.1(b)(2)(i). Third, the offense involved sophisticated means. *See* USSG § 2B1.1(b)(10)(C), cmt. n. 9(B). Vidal and others developed a complicated order intake system, deployed a variety of refunding methods, accepted payments through cryptocurrency, and used an online moniker and fraudulent email address to conceal his identity. The scheme resulted in more than $6 million in losses for retailer victims around the country. Fourth, the Court should add an additional two points because Vidal pleaded guilty to money laundering under 18 U.S.C. § 1956. *See* USSG § 2S1.1(b)(2)(B).

Finally, Vidal plainly led or organized a criminal activity that involved five or more participants. To impose the organizer or leader enhancement, "there must be evidence that the defendant exercised some control over others involved in the commission of the offense **or** was responsible for organizing others for the purpose of carrying out the crime." *United States v. Tat*, 97 F.4th 1155, 1162 (9th Cir. 2024). Vidal admittedly hired and managed staff, Plea Agreement ¶ 8(j), even recruiting additional workers through an online job application. *See* Exs. C & D.

Vidal has zero criminal history points, which puts him in criminal history category I. A total offense level of 32 and a criminal history category of I yields a guidelines range of 121 – 151 months.

United States' Sentencing Memorandum - 11
*United States v. Vidal*, CR24-100RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

### III. FACTORS RELATED TO SENTENCING RECOMMENDATION

The United States respectfully requests that the Court sentence the defendant to 60 months of confinement, followed by a three-year term of supervised release. This below-guidelines recommendation appropriate balances "the nature and circumstances of the offense," and the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," against Vidal's history and characteristics and other mitigating factors. *See* 18 U.S.C. §§ 3553(a)(1), (a)(2)(A), and (a)(2)(C).

**A.   The offense is serious and warrants a serious sanction.**

Several aspects of Vidal's crime are particularly aggravating and warrant the recommended 60-month sentence.

First is the fraud's breadth, scope, and sophistication. Although Vidal initially studied under co-schemer Al-Maarej, he quickly rose to prominence within the refunding community. Ressu Refunds was a stunningly successful fraudulent enterprise—within the span of about seven months in 2022, Vidal processed more than 3,000 fraudulent refunds worth more than $5 million. When Ressu Refunds was at its peak, Vidal started working with Simple Refunds and later purchased that channel from Al-Maarej. Vidal eventually sold both channels in April 2023, but not because he saw the error in his ways. Rather, he shifted his focus his resale business: Affordable Deals. With Affordable Deals, Vidal continued to enable fraudulent refunding by knowingly selling stolen goods for profit. Vidal's crime was not a momentary lapse in judgment—it shows persistence and creativity over several years.

Like Al-Maarej, Vidal developed and deployed creative methods to defraud the victim retailers. For example, Vidal or his staff would manipulate the label associated with the return package to create the false appearance that the purchaser returned the refunded item to the victim retailer. Plea Agreement ¶ 8(k). Vidal also used USPS and UPS employees to input false scans into package tracking history to give the false impression

United States' Sentencing Memorandum - 12
*United States v. Vidal*, CR24-100RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

that the package was lost in transit. Plea Agreement ¶ 8(k)(ii). Vidal also frequently boasted about "exclusive Ressu" or "personal / private Ressu" refunding methods. *See* Ex. G.

Vidal put considerable effort into developing a streamlined mechanism to enable fraud and evade retailer and law enforcement detection. On Ressu Refunds, he created an order intake system that organized customer information into a Google spreadsheet for easy sharing with his staff. He color coded the spreadsheet to indicate who among his staff was assigned to a particular refund. Later, he developed and deployed a "bot"—dubbed "Rezzu Bot"—to collect customer order information and collate it into the Google spreadsheet. *See* Ex. H. This simple piece of software automated the task of data entry for customers and further streamlined the fraud. On Simple Refunds, Vidal was instrumental in developing and launching a catalogue of victims—the Simple Refunds Store List—that included information on how Simple Refunds purchasers could more effectively execute the fraud. *See* Plea Agreement ¶ 8(v).

Second, Vidal's role in the offense is also an important aggravating factor. As explained in more detail above, Vidal was the admitted leader of the scheme: He owned Ressu Refunds, managed workers, and created an organizational structure that facilitated the fraud on a massive scale. He even recruited staff using an online job application form. This role increases his culpability for the crime and militates in favor of a lengthy sentence.

Third, Vidal's refunding fraud had a significant impact on the victim retailers. VC3, a local retailer, identified retail return fraud as its "number one fraud problem" in May 2023. Ex. A, at 3. Perpetrators—most of whom were 18-24 year old men—targeted high-value electronics. *Id.* Circumstances during the pandemic made the fraud difficult to track and particularly harmful for the retailer and its customers. *Id.* at 1–2. The retailer estimated it lost $23 million to refunding fraud in just a few months in 2021. *Id.* Another company changed its refunding policies after experiencing retail return fraud, Ex. I, to the detriment of many customers. Although many of Vidal's victims were large companies, many others

United States' Sentencing Memorandum - 13
*United States v. Vidal*, CR24-100RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

were small retailers with thin margins. Refunding fraud doesn't just impact retailers; those companies often pass costs to consumers.

**B.    The requested five-year sentence will promote respect for the law, deterrence, and will provide just punishment.**

Vidal persisted in a years-long fraud even though he knew what he was doing was wrong. Retailers consistently warned Vidal and his customers to stop their illegal refunding. Instead of exiting the crime, Vidal developed sophisticated ways of evading his victims' fraud detection measures. Posts on Ressu Refunds counsel purchasers on "operational security," i.e., steps they could take to avoid retailer and law enforcement detection. For example, Vidal counseled his clients that they should cancel their credit cards after doing a fraudulent refund with a particular retailer to "prevent rebills," *i.e.*, the retailer charging the client for the refunded item. He wrote:



Ex. J. As part of a lengthy thread addressing VC1's efforts to prevent fraud, he wrote: "If you got hit with an Amazon rebill from an old in-transit refund order, simply dispute while it's pending and change your card, Amazon doesn't answer disputes 🤞 you've already been hit might as well try anything." *Id.* Vidal's distain for his victims and efforts to evade their enforcement measures supports the need for a serious sanction.

Vidal also laundered proceeds to conceal the source of payments from Ressu Refunds customers. He gained access to a bank account belonging to an innocent third

United States' Sentencing Memorandum - 14
*United States v. Vidal*, CR24-100RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

party, S.G. He directed refunding customers to send payments to S.G.'s account and then transferred those proceeds to himself. Plea Agreement ¶ 8(o) & 8(p). It also used S.G.'s identity and her to potential criminal investigation. Vidal's operational security and money laundering show knowledge of guilt and heightened sophistication—both aggravating facts that support the requested sentence.

The need for general deterrence also supports the requested sentence. *See United States v. Onuoha*, 820 F.3d 1049, 1056 (9th Cir. 2016) ("A conviction and resulting sentence serves more purposes than the incapacitation, specific deterrence, and rehabilitation of an individual; general deterrence of the serious crime at issue here is also an important consideration."). General deterrence is especially important in this case because Vidal cultivated an entire online community of refunders—more than 1,000 followers on Ressu Refunds alone—any of whom could have created their own refunding service. Vidal's cohort must see that the Court takes his fraud seriously or they will have incentive to repeat his crimes.

### C. Vidal's history and characteristics, including his conduct post-search warrant, support the below-guidelines recommendation.

There are significant mitigating factors that support the below-guidelines recommendation of 60 months. First are Vidal's history and characteristics. Vidal is young: He is currently 29. He started refunding fraud about three years ago, when he was 26. The PSR describes a somewhat difficult childhood that may have impacted Vidal's development and motivation to criminal behavior. PSR ¶¶ 57–60, 70–72. Vidal has no criminal history; the below-guidelines recommendation is appropriate for a first-time offender.

Vidal also quickly took responsibility for his crimes and made steps to make amends, which indicates true remorse and militates in favor of the government's recommendation. Vidal spoke to law enforcement in a *Mirandized* interview when they searched his home in September 2023. He admitted that he operated online as Ressu and

United States' Sentencing Memorandum - 15
*United States v. Vidal*, CR24-100RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

was involved in fraudulent refunding. He disclosed that he kept stolen goods on his friend's property. He led agents to the shipping containers containing the goods and provided consent to search. When agents returned several weeks later, they were able to seize the stolen items. Vidal quickly indicated his willingness to plead guilty to an information post-search, which he did in the summer of 2024. Vidal admitted the relevant conduct of his crime in a lengthy plea agreement. For the past year, Vidal has been living near family in Pennsylvania. The U.S. Probation Office reports that he has done well on pretrial release. He is trying to build a family.

Vidal's conduct, from the moment of the FBI search through sentencing, shows his willingness to take responsibility for his crimes, make amends, and move on. This weighs heavily in favor of the government's below guidelines recommendation.

**D.     The government's recommendation avoids unwarranted disparities.**

Section 3553(a)(6) requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). Congress's "primary goal" with section 3553(a)(6) was promoting nationwide consistency in sentencing. *United States v. Jaycox*, 962 F.3d 1066, 1071 (9th Cir. 2020).

Here, a within-guidelines sentence is not necessary for the reasons discussed above. And the government's sixty-month recommendation avoids any disparities with Vidal's co-schemer, Sajed Al-Maarej. The government recommended 78-months for Al-Maarej, and this Court sentenced him to 36 months in prison. Vidal was Al-Maarej's student who eventually struck out on his own to create Ressu Refunds. Vidal then returned purchased Al-Maarej's refunding site—Simple Refunds. Vidal is less culpable than Al-Maarej because Vidal did not train others as part of a mentorship program, nor did he show Al-Maarej's commitment to recruiting purchasers. The government's recommendation reflects these differences.

United States' Sentencing Memorandum - 16
*United States v. Vidal*, CR24-100RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**E.     The requested sentence provides restitution to the victims.**

Along with 60 months in prison, the government requests the Court order $6,067,168 in restitution to the victims. The Mandatory Victim's Restitution Act provides that "the court shall order . . . that the defendant make restitution to the victim of the offense" when the offense of conviction is one listed in the statute. 18 U.S.C. § 3663A(c)(1)(B). A victim under the MVRA is "any person directly harmed by the defendant's criminal conduct in the course of the scheme." 18 U.S.C. § 3663A(a)(1)-(2). The amount of restitution is calculated based on the victim's actual loss. *See United States v. Gagarin*, 950 F.3d 596, 607 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 2729, 210 L. Ed. 2d 887 (2021). A district court has "wide discretion in fashioning restitution orders." *United States v. Grovo*, 826 F.3d 1207, 1221 (9th Cir. 2016).

Vidal agreed to provide full restitution to the victims, as outlined in paragraph 12 of the Plea Agreement. Plea Agreement ¶ 12. The government will provide a list of victims and allocations at the time of sentencing.

Vidal also to forfeit the proceeds he obtained from the offense—$727,000. The government requests the Court include forfeiture as part of its pronouncement of the sentence.

United States' Sentencing Memorandum - 17
*United States v. Vidal*, CR24-100RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## IV. CONCLUSION

For the foregoing reasons, the government requests the Court sentence Vidal to 60 months in prison and three years of supervised release under the conditions recommended by the U.S. Probation Office.

DATED this 30th day of January, 2025.

Respectfully submitted,

SARAH Y. VOGEL
Attorney for the United States, Acting Under Authority Conferred by 28 U.S.C. § 515

*/s/ Lauren Watts Staniar*
Lauren Watts Staniar
Assistant United States Attorney
700 Stewart Street, Suite 5220
Seattle, WA 98101-1271
Telephone:   (206) 553-5172
E-mail:   lauren.staniar@usdoj.gov

United States' Sentencing Memorandum - 18
*United States v. Vidal*, CR24-100RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970